# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
|)
**STEPHEN IFEANYI AMOBI**, *et al.*,     )
    )
       **Plaintiffs,**     )
    )
       **v.**     )     **Civil Action No. 08-1501 (BEL/JMF)**
    )
**DISTRICT OF COLUMBIA DEP'T**     )
**OF CORRECTIONS,** *et al.*,     )
    )
       **Defendants.**     )
_____)

## MEMORANDUM OPINION

This case has been referred to me for resolution of discovery disputes. Five discovery motions are currently pending before the court: 1) <u>Defendants' Motion to Quash the Subpoena Served on Jonathan O'Neill, Attorney Advisor, and For a Protective Order</u> [#54] ("Mot. to Quash"), 2) <u>Plaintiffs' Motion for Determination of Claim of Privilege</u> [#70] ("Mot. for Det. of Claim of Priv."), 3) <u>Plaintiffs' Motion to Compel Production of Documents</u> [#75] ("Mot. to Compel #1"), 4) <u>Plaintiffs' Motion to Compel Production of Documents</u> [#79] ("Mot. to Compel #2"), and 5) <u>Plaintiffs' Motion to Extend Discovery</u> [#80] ("Mot. to Extend Disc."). Plaintiffs' first Motion to Compel Production of Documents is not addressed in this memorandum opinion, but in a separate memorandum order. I will address the remaining motions in turn.

## I. Background

On June 4, 2006, plaintiff Stephen I. Amobi, an officer with the Department of Corrections ("DOC"), was involved in an altercation with an inmate. Complaint ("Compl.") ¶¶ 6-7. After the altercation, an official at the correctional institution, also a named defendant,

called the Metropolitan Police Department. Compl. ¶ 9.  An MPD officer then arrived at the jail

and arrested Amobi. Compl. ¶¶ 9-10.  Defendants moved for Amobi's summary removal. Compl.

¶ 11.  Amobi had a right to a hearing on his removal, and the hearing officer determined that

Amobi should be reinstated. Id.  The hearing officer reversed her decision on remand. Compl. ¶¶

11-12.  The Superior Court first dismissed the criminal case against Amobi and then acquitted

Amobi in the second criminal case brought against him. Memorandum of Points and Authorities

in Support of Plaintiffs' Motion for Determination of Privilege [#70] ("Memo. for Det. of Claim

of Priv.") at 2; see also, Compl. ¶ 15.  Amobi appealed his removal to an arbitrator. Id.  During

arbitration, the removal hearing officer admitted originally to have recommended Amobi's

reinstatement, but plaintiff claims that the hearing officer was pressured to change her

recommendation. Compl. ¶ 16.  Amobi won the arbitration and was reinstated. Compl. ¶ 17.

Amobi and his wife bring this action to seek retribution for the injuries suffered as a direct and

proximate result of defendants' actions. Compl. ¶¶ 18-19.

## II.  Defendants' Motion to Quash the Subpoena Served on Jonathan O'Neill, Attorney Advisor, and For a Protective Order and Plaintiffs' Motion for Determination of Claim of Privilege

These motions relate to the inadvertent disclosure of a memorandum created by an

attorney advisor for the District of Columbia on the eve of arbitration proceedings related to the

reinstatement of Amobi.  During discovery, plaintiffs served defendants with written document

requests. Memorandum and Points of Authorities Supporting Defendants' Motion to Quash the

Subpoena Served on Jonathan O'Neill, Attorney Advisor, and for a Protective Order [#54]

("Memo. to Quash") at 4.  Defendant Brown asserted privileges for most of the requested

documents, claimed not to have any responsive documents, and indicated that the District might

2

have documents responsive to the request. Id.  When it made its production, the District

disclosed a memorandum prepared by attorney advisor Repunzelle Johnson on the eve of the

arbitration proceedings. Id.  Jonathan O'Neill was copied on the memorandum. Id.  Both

Johnson and O'Neill serve as attorney advisors for the Office of Labor Relations and Collective

Bargaining ("OLRCB"). Id.

      After realizing what they had done, defendants' counsel sent a letter to plaintiffs asking

for the return or destruction of the confidential document. Id.  Plaintiffs have sequestered the

document but have refused to destroy it.  Plaintiffs then noticed O'Neill for a deposition. Id. at 5.

Defendants argue that the subpoena for the deposition should be quashed because plaintiffs seek

information and evidence protected by the attorney-client and work-product privileges. Id.

Defendants additionally seek an order of protection that the depositions of both O'Neill and

Johnson not be taken in this case. Id. at 9.  Plaintiffs responded to defendants' motion with their

own Motion for Determination of Claim of Privilege regarding the memorandum in question.

See Mot. for Det. of Claim of Priv.  Defendants responded by requesting that the court deny

plaintiffs' motion and order plaintiffs to return the memorandum and preclude them from using it

in the instant litigation. Defendants District of Columbia and Devon Brown's Memorandum in

Response to Plaintiffs' Motion for Determination of Claim of Privilege [#74] ("Opp. to Mot. for

Det. of Claim of Priv.") at 11.

*a. Summary of Arguments*

      Defendants argue that the attorney-client and/or work-product privileges apply to the

deposition of O'Neill. Memo. to Quash at 5.  O'Neill represented the District at the arbitration

proceedings. Id. at 6.  Defendants argue that the subpoena should be quashed because it seeks the

3

disclosure of privileged or other protected matter. Id.  Defendants also argue that there has been

no waiver in this case. Id. at 7.  Defendants concede that they inadvertently disclosed the

arbitration memorandum but argue that counsel immediately notified plaintiffs' counsel about

the inadvertent disclosure. Id.  Defendants rely on recently adopted Federal Rule of Evidence

502 to assert that privilege has not been waived. Id. at 8.  Rule 502 states that when privileged

information is inadvertently disclosed, "the disclosure does not operate as a waiver in a Federal

or State proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or

protection took reasonable steps to prevent disclosure; and (3) the holder promptly took

reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil

Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b).

Defendants claim that: (1) disclosure was inadvertent; (2) defendant Brown asserted

attorney-client privilege to the plaintiffs' requests for documents and indicated that he did not

have in his possession documents responsive to plaintiffs' requests; and (3) counsel took steps

immediately upon discovery of the disclosure in accordance with Rule 26(b)(5)(B). Id. at 8.

Defendants argue that in light of these facts, defendants have met the standard set forth by Rule

502 and that no waiver of privilege applies. Id.  Defendants further argue that they are entitled to

a protective order to preclude depositions of O'Neill and Johnson, because Federal Rule of Civil

Procedure 26(c) allows the court, for good cause, to issue a protective order forbidding

disclosure or discovery to protect a party from annoyance, embarrassment, oppression, or undue

burden or expense. Fed. R. Civ. P. 26(c).  Defendants argue that plaintiffs seek the deposition

merely to annoy, embarrass, or oppress O'Neill. Memo. to Quash at 9.  Also, defendants argue

that because any information sought from O'Neill is privileged, his deposition would constitute

an undue burden. Id.

Plaintiffs argue that the memorandum is not privileged and that even if it were, all privileges have been waived.  See Memo. for Det. of Claim of Priv. at 26.  They also argue that the memorandum is not privileged because: 1) defendant Brown does not have an attorney-client privilege with the OLRCB attorneys; 2) public officials used the services of the OLRCB attorneys "to corruptly endeavor to influence a matter before an agency, to obstruct justice, to violate the civil rights of Officer Amobi, to perpetuate a fraud and to commit an intentional tort"; and 3) the memorandum does not contain communications entitled to protection under the attorney-client privilege. Id. at 26.

They also quarrel with defendants' characterization of the disclosure of the memorandum as inadvertent.  They assert that the belated claim of inadvertence is a disingenuous attempt to reverse a conscious decision to disclose the memorandum, followed by an about face.  See Plaintiffs' Reply to Defendants' Opposition to Their Motion for Determination of Claim of Privilege and in Response to Defendants' Motion to Quash Subpoenas [#84] ("Reply to Mot. for Claim of Priv.") at 3.

*b. Analysis*

1. Motion to Quash and for a Protective Order

To grant the motion to quash and the protective order, I would have to find that "there is not a single question that could be propounded to [O'Neill] that would not be objectionable because it would disclose a confidential communication between attorney and client or attorney work product."  See Sanders v. Dist. of Columbia, No. 06-CV-1411, 2009 WL 481683, at *4 (D.D.C. Feb. 25, 2009).  No witness can claim immunity as to facts (id.), and O'Neill and

5

Johnson are no exception. <u>Id.</u>  Further, I cannot find, as defendants argue, that plaintiffs seek the depositions merely to annoy, embarrass, or oppress O'Neill or Johnson merely because the defendants say this is so.

With that said, I must make it clear that I am reluctant to permit a deposition of these two lawyers that has no limits.  Courts have frequently expressed their reluctance to permit counsel to be deposed and called as witnesses.  <u>See, e.g.,</u> <u>C & E Servs., Inc. v. Ashland, Inc.</u>, No. 03-CV-1857, 2008 WL 1744600, at *2 (D.D.C. Apr. 14, 2008).  More specifically, I do not see why Johnson's analysis of the weaknesses in the DOC's case against plaintiff is relevant.  A witness's opinion about the weakness or strength of a party's case does not make any fact in that case more or less likely.  It has no probative value whatsoever.  Such an opinion is inadmissible.  <u>See, e.g.,</u> <u>Hogan v. Am. Tel. & Tel. Co.</u>, 812 F.2d 409, 411-12 (8th Cir. 1987) (finding that a witness cannot instruct the fact-finder on the applicable principles of law) (citations omitted); <u>see also</u> <u>Weston v. Wash. Metro. Area Transit Auth.</u>, 78 F.3d 682, 684 (D.C. Cir. 1996) (finding that legal conclusions are outside a witness's area of expertise).  That the DOC proceeded with the arbitration despite those weaknesses might bear on the intent or motive that the DOC had in proceeding, but that ship has sailed since Johnson concedes those weaknesses and plaintiff knows that the District proceeded despite her evaluation of them.  Taking her deposition to have her admit that she wrote the memorandum and that it describes the weaknesses in the case is a waste of time; no one is pretending that the document is not authentic and that she did not write it.

The only permissible area of inquiry is whether, as plaintiffs charge in a most serious accusation, that Johnson and O'Neill knew that they were submitting documents into evidence

that stated that the inmate plaintiff was accused of harming had been interviewed when O'Neill

and Johnson knew that he had not.  Their use of false information to persuade the finder of fact,

if true, might tend to establish their participation in a conspiracy to deprive plaintiff of his right

to a fair hearing.  Thus, this in the only line of inquiry that I will permit on this record.

I will deny defendants' motion to quash the subpoena served on O'Neill.  I will likewise

deny defendants' motion for a protective order to preclude the deposition of both O'Neill and

Johnson.  I will, however, as I have in the past, order counsel to conduct the depositions in my

jury room on a day that I will be available so that I can rule on any objections as the arrive.

### 2. Plaintiffs' Motion for Determination of Claim of Privilege

Defendants claim that OLCRB clearly represented Brown and the DOC in the arbitration

proceedings at issue and that the memorandum is privileged communication regarding the

arbitration. Id.  Defendants also argue that the memorandum is privileged attorney-work product,

as it was prepared for the arbitration proceeding. Id.  Plaintiffs rebut this, claiming that the

OLCRB attorneys could not have represented Brown in the arbitration proceedings, because the

proceedings were brought in regards to his actions and the OLCRB's interests were adverse to

Brown's personal interests. Memo. for Det. of Claim of Priv. at 32.  Brown has provided an

affidavit swearing to the fact that he understood his relationship with Johnson and O'Neill to be

protected by the attorney-client privilege. Defendants District of Columbia and Devon Brown's

Reply to Plaintiffs' Opposition to Their Motion to Quash the Subpoena on Jonathan O'Neill,

attorney advisory, and for a Protective Order [#73] ("Reply Mot. to Quash") at Ex. C.  Plaintiffs

claim that even if the memorandum is found to be privileged, this privilege has been waived

under Federal Rule of Evidence 502, by the crime-fraud exception to privilege and by " issue-

7

injection", i.e., by placing in issue the lawfulness of their conduct premised on advice they received from counsel. Memo. for Det. of Claim of Priv. at 32-35.

The issues presented must be narrowed because of the significance, to be explained, of new Federal Rule of Evidence 502, which specifies the circumstances under which a privilege is waived despite the claim that the privileged document was inadvertently produced.  If the document is in fact privileged but was inadvertently disclosed and that disclosure is not excused by the application of Rule 502, then the privilege protecting it from production is gone.  Hence, I will begin by first analyzing whether the document at issue is privileged and then whether the privilege was waived.

### A. Attorney-client Privilege

The purpose of the attorney-client privilege is to protect a client's confidences to his or her attorney, thereby encouraging an open and honest relationship between the client and the attorney. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). Federal courts have extended the privilege in the converse direction, protecting attorney's written communication to a client, with the purpose of again protecting against inadvertent disclosure of client's confidences; however, the District of Columbia Circuit has adopted a strict construction of the privilege.  The communication from an attorney is only protected if it is based on confidential information provided by the client. Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977).  Thus, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (citing Brinton v. Dep't of State, 636 F.2d 600, 604 (D.C.Cir. 1980), cert. denied, 452 U.S. 905 (1981)).

8

Traditionally, the courts have concluded that the burden falls to the claimant of the privilege, Brown, to present sufficient facts to establish the privilege. In re Sealed Case, 737 F.2d at 99 (citing Fed. Trade Comm'n v. TRW, Inc., 628 F.2d 207, 213 (D.C. Cir.1980)). Accordingly, the claimant must "demonstrate with reasonable certainty that the attorney's communication," in this case the memorandum, "rested in significant and inseparable part on the client's confidential disclosure." Id. (citing Federal Trade Comm'n, 628 F.2d at 213; Brinton, 636 F.2d at 603-04; Mead Data Cent., Inc., 566 F.2d at 254).

Brown's affidavit is not sufficient to meet the burden to demonstrate that the attorney communication in this case rested on any disclosures made by Brown to Johnson. Reply Mot. to Quash at Ex. C.  Brown does not indicate that he disclosed any privileged communication with Johnson during the course of the arbitration proceedings; rather, he asserts a broad privilege over "all discussions, and written documents, having to do with the legal business of the Department." Id. at 3.  This is simply too broad of an assertion of the attorney-client privilege and does not provide any evidence regarding the specific memorandum in question.  Further, no part of the memorandum appears in any way to rest in significant and inseparable part on the client's confidential disclosure.  Instead, the introduction of the memorandum indicates that Johnson based the memorandum on her review of a grievance packet, presumably for the arbitration, presented by the DOC that included the hearing officer's report, the remand from Brown, and the criminal trial transcript.  She further based the findings in the memorandum on conversations she had with the Internal Affairs Department of the DOC.  None of these sources of information constitutes confidential disclosure by the client, nor do they allude to any confidential disclosure. Johnson's memorandum does not rest in any part, much less in significant and inseparable part,

9

on Brown's confidential disclosures.  I cannot find that the memorandum is protected by the attorney-client privilege.

## B. Attorney Work-Product Privilege

Next I will consider whether the memorandum is protected by the attorney work-product privilege.  The work-product privilege protects written materials that lawyers prepare "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3).  According to Rule 26(b)(3), "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" may not be discovered. Fed. R. Civ. P. 26(b)(3)(A).  The purpose of the privilege is to protect the adversary process by ensuring that lawyers work with a "degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947).  In this case, Johnson clearly prepared the memorandum in preparation for the arbitration hearing.  Dated October 1, 2007, the opening paragraph of the memorandum states that the memorandum relates to the arbitration scheduled for the very next day.  There is no question that an arbitration, adversarial in nature, can be characterized as "litigation" and work product prepared for such a proceeding should receive the same protection under the work-product doctrine.  See e.g., Samuels v. Mitchell, 155 F.R.D. 195, 200 (N.D. Cal. 1994).  Thus, the memorandum is protected by the attorney work-product privilege for it was prepared for "trial" as the Rule requires.  It is equally clear that it contains the mental processes and analyses of one of the lawyers representing a party in the arbitration. The next question presented is whether the privilege was waived by its disclosure to plaintiff.

## C. Waiver of Privilege under Federal Rule of Evidence 502(b)

Just over a year ago, parties in defendants' position in this Circuit would have no

argument to protect against waiver; they would simply be dead in the water with an inadvertent disclosure.  The District of Columbia Circuit found that any disclosure automatically constitutes waiver, even in the case of inadvertent disclosure.  In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989).  Rule 502(b), enacted on September 19, 2008, overrides the long-standing strict construction of waiver in this Circuit.  The new Federal Rule of Evidence 502(b) protects from waiver a privileged document that has been disclosed inadvertently.  See Fed. R. Evid. 502(b).  The rule brings uniformity across the circuits to their once differing treatment of the effect of certain inadvertent disclosures of privileged materials.  See Fed. R. Evid. 502 advisory committee note.  The rule takes what the Advisory Committee calls the "middle ground" regarding the effect of inadvertent disclosure on waiver of privilege.  Id. at Subdivision (b).  This middle ground, unlike the D.C. Circuit's strict waiver rule, requires the court to apply a three-part test to determine if the inadvertent disclosure constitutes a waiver.  See Fed. R. Evid. 502(b)(1)-(3).  The three-part test finds that the disclosure is not a waiver if: (1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.  Id.[1]

While an inadvertent disclosure no longer carries with it the cruel cost of subject-matter waiver, Rule 502(b) does not remove the parties' responsibility to take reasonable precautions against disclosure of privileged documents.  Instead, the reasonableness of precautions taken to

---

[1] A significant motivation for the new rule was the increased prominence of electronic discovery that may involve the production of thousands of pieces of electronically stored information ("ESI") that has led fortunes to be spent analyzing every piece lest the inadvertent production of one be deemed a waiver not only as to the piece inadvertently disclosed but as to all the others that relate to the same subject matter.  See Fed. R. Evid. 502 advisory committee's note.  To date, most of Rule 502 cases deal with electronic discovery.  See, e.g., Heriot v. Byrne, 257 F.R.D. 645, 660-61 (N.D. Ill. 2009); and Rhoads Indus., Inc. v. Bldg. Materials Corp. of America, 254 F.R.D. 216 (E.D. Pa. 2008).

protect the privilege is an explicit consideration in determining whether waiver occurred, no matter the inadvertency of the disclosure.

Rule 502 itself does not provide any guidance on who has the burden of proving waiver. In this district, prior to the enactment of the rule, "the proponent of the privilege. . . [had] the burden of showing that it [had] not waived attorney-client privilege." See United Mine Workers of Am. Int'l. Union v. Arch Mineral Corp.,145 F.R.D. 3, 6 (D.D.C. 1992) (citing Sec. and Exch. Comm'n v. Gulf & Western Indus., Inc., 518 F.Supp. 675, 682 (D.D.C. 1981)).  I see no reason why Rule 502 can be interpreted to modify that rule and I will apply it.

Thus, having determined that the document is privileged as work product and that defendants have the burden to prove that the privilege has not been waived, I begin the 502(b) three-part test for waiver.  The first step of the analysis is determining whether the disclosure was inadvertent.  Rule 502 does not define inadvertent disclosure.  Prior to the rule, the court of appeals did not distinguish between inadvertent and other types of disclosure; however, other courts that followed a less strict construction of waiver considered a number of factors to determine inadvertency, including the number of documents produced in discovery, the level of care with which the review for privilege was conducted and even the actions of the producing party after discovering that the document had been produced.  See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 388 (7th Cir. 2008) and Heriot, 257 F.R.D. at 658-59.  Other courts have found that Rule 502(b) provides for a more simple analysis of considering if the party intended to produce a privileged document or if the production was a mistake.  See e.g., Coburn Group, LLC v. Whitecap Advisors LLC, 640 F. Supp. 2d 1032, 1037 - 1038 (N.D. Ill. 2009).  This interpretation seems to be in line with one of the goals of the

drafting committee: to devise a rule to protect privilege in the face of an innocent mistake.

Coburn, F.Supp.2d at 1038 (citing Ltr. from Lee H. Rosenthal, Chair, Comm. on Rules of

Practice and Procedure, to Hon. Patrick J. Leahy, Chairman, Comm. on the Judiciary, U.S.

Senate, and Hon. Arlen Specter, Member, Comm. on the Judiciary, U.S. Senate, at 2 (Sept. 26,

2007)).

Additionally, defining inadvertent as mistaken comports with the dictionary definition of

the word: " Of persons, their dispositions, etc.: Not properly attentive or observant; inattentive,

negligent; heedless. . . . Of actions, etc.: Characterized by want of attention or taking notice;

hence, unintentional." The Oxford English Dictionary (2d ed. 1989), *available at* OED Online,

Oxford University Press, http://dictionary.oed.com/cgi/entry/50113734.  There is every reason to

suppose that Congress uses this definition.  See, e.g., Hercules Inc. v. Envtl. Prot. Agency, 938

F.2d 276, 281 (D.C. Cir. 1991) (citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241

(1989) (citations omitted)).  Additionally, permitting "inadvertence" to be a function of, for

example, the amount of information that had to be reviewed or the time taken to prevent the

disclosure melds two concepts, "inadvertence" and "reasonable efforts," that should be kept

distinct.  One speaks to whether the disclosure was unintended while the other speaks to what

efforts were made to prevent it.  I will therefore use the word "inadvertent" from Rule 502 to

mean an unintended disclosure.

In this case, the disclosure was made by the District of Columbia in its response to

plaintiffs' request for documents.  The defendants claim that they did not intend to disclose the

memorandum and that its disclosure was a mistake, i.e. it was "inadvertent" under Rule 502.

Mot. to Quash at 9.[2]   Plaintiffs argue that the memorandum was disclosed by someone who believed it should be disclosed, not by someone who made a mistake. Reply to Mot. for Claim of Priv. at 3.  According to plaintiffs, if the disclosure was by a lawyer, then it clearly was not mistaken and not inadvertent;[3] if it was by a non-lawyer, then defendants did not take reasonable steps to protect privilege. Reply to Mot. for Claim of Priv. at 3. The premise of that statement is wrong.  Lawyers make inadvertent mistakes; it is *judges* who never make mistakes.

 More to the point, to find that a document disclosed by a lawyer is never inadvertent would vitiate the entire point of Rule 502(b).  Concluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish.  It would essentially reinstate the strict waiver rule in cases where lawyers reviewed documents, and it would create a perverse incentive not to have attorneys review documents for privilege.

 Accepting for the purpose of this analysis that the disclosure was inadvertent, the next step is to consider whether the holder of the privilege or protection took reasonable steps to prevent disclosure of the privileged document. Fed. R. Evid. 502(b)(2).  This second step in the analysis has been considered by several courts in reference to electronic discovery.  See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 259 (D. Md. 2008).  The Advisory

---

[2] Plaintiffs claim that defendants produced the document intentionally and then decided, once they started to prepare for depositions and presumably realized the full effects of its contents, to assert privilege over it. Reply to Mot. for Claim of Priv. at 3.  There is no evidence to support this claim, save the fact that the document was disclosed and that the discovery of the disclosure occurred around the time depositions began.  In any event, it is unnecessary to resolve the factual issue that emerges as to whether or not the disclosure was inadvertent that would turn on what the defendants' lawyers did and their intent when they did it, because I am otherwise going to find that defendants cannot avail themselves of Rule 502.

[3] In any event, that the reviewer was a non-lawyer may be considered relevant, but it is not unreasonable in every case. Heriot, 257 F.R.D. at 650 n.10.

14

Committee gives guidance on the topic of reasonableness by providing some non-dispositive factors a court may consider, including the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of the disclosure, the number of documents to be reviewed, the time constraints for production, and the overriding issue of fairness. Fed. R. Evid. 502 advisory committee note at Subdivision (b).  Despite this guidance, the Committee indicates that it consciously chose not to codify any factors in the rule because the analysis should be flexible and should be applied on a case by case basis. Id.

The instant case, from what information I have, does not implicate concerns about large quantities of ESI data, which were at the heart of the proposal to create Rule 502, where it would be appropriate to consider, for example, the software that was used to discriminate between the privileged and the non-privileged.  The document in question was instead a hard copy found in paper files.  Defendants do not provide the court with any indication of the methodology used to review documents for privilege, but only vaguely refer to several reviews of the documents to be produced. Memo. to Quash at 8.  Further, defendants do not indicate how many total documents they produced, so the court cannot determine the magnitude of the error in producing this one document consisting of four pages.  Indeed, one keeps searching for some statement somewhere in the defendants' papers that speaks to what they did when they got the documents, how they segregated them so that the privileged documents were kept separate from the non-privileged, and how, despite the care they took, the privileged document was inadvertently produced. Instead, the court is told in the passive voice that "several reviews of the documents to be disclosed were undertaken, [and] this document was inadvertently produced." Memo. to Quash at 8.  Hence, the efforts taken are not even described, and there is no indication of what specific

efforts were taken to prevent disclosure, let alone any explanation of why these efforts were, all things considered, reasonable in the context of the demands made upon the defendants.  Instead, "the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure."  Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc. 132 F.R.D. 204, 209 (N.D. Ind. 1990).  There can be no reasonable efforts, unless there are efforts in the first place.  Hence, defendants do not meet the burden of proving that the privilege was not waived in regards to the memorandum.  Id.

Finally, there is no injustice here that I can and should redress.  See id. (finding that, given the extent of the disclosure, fairness dictates that the non-disclosing party be allowed to utilize its windfall).  As other courts have noted, "any order issued now by the court to attempt to redress these disclosures would be the equivalent of closing the barn door after the animals have already run away."  Victor Stanley, Inc., 250 F.R.D. at 263 (citing FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 483 (E.D. Va. 1991)).  Thus, while Rule 502(b) would in essence allow me to round up the animals and put them back in the barn, defendants have not provided any evidence that they took reasonable efforts to keep the barn door closed.  In finding that privilege is waived,"the only 'injustice' in this matter is that done by [d]efendants to themselves."  Id.  Even if rectifying the error 55 days after discovering it was a prompt effort to rectify the error as 502(a)(3) requires (a debatable proposition in itself),[4] defendants' failure to take reasonable efforts to prevent the disclosure in the first place dooms their reliance on the rule.  See Fed. R. Evid. 502(b)(2).

---

[4] See, e.g., The Navajo Nation v. Peabody Holding Co., Inc., 255 F.R.D. 37, 45 (finding that one factor in determining reasonableness is the length of time it takes the party claiming privilege to discover the disclosure) (citing Aramony v. United Way of Am., 969 F.Supp. 226, 237 (S.D.N.Y. 1997)).

I therefore find that the protection of the work-product privilege has been waived and plaintiff does not have to return, sequester, or destroy the memorandum.

### III. Motion to Compel

Plaintiffs' second motion to compel is for an order compelling the United States Attorney's Office for the District of Columbia to produce certain documents plaintiffs had requested in a subpoena of documents.  See Plaintiffs' Motion to Compel Production of Documents [#79] ("Mot. to Compel #2").  Plaintiffs also seek to interview or depose Assistant United States Attorney Michael Song and any other Assistant U.S. Attorney involved in the prosecution of Stephen Amobi. Id. at 3.  The U.S. Attorney's Office is not a party to the case; however, plaintiffs allege that defendants maliciously prosecuted Amobi.  Plaintiffs claim that documents relating to Amobi's prosecution are relevant to their claims for the purpose of discovering evidence of undue influence asserted by defendants on the U.S. Attorney's Office. Id. at 2.  Plaintiffs originally served the U.S. Attorney's Office with a subpoena duces tecum on March 12, 2009. Memorandum of Points and Authorities in Support of Non-Party U.S. Attorney's Office for the District of Columbia's Opposition to Plaintiffs' Motion to Compel [#93] ("USAO's Opp.") at Ex. 1.  The U.S. Attorney's Office divided relevant documents into three categories: (1) documents the U.S. Attorney's Office produced to plaintiffs; (2) documents sent to the District of Columbia Attorney General's Office for "review and possible release"; and (3) documents withheld as privileged. USAO's Opp. at 4.  The U.S. Attorney's office produced over 100 pages of documents from the first category. Id.  The second category contained documents originating with either the Metropolitan Police Department or the District of Columbia Department of Corrections.  The U.S. Attorney's Office sent these documents to the

17

D.C. Attorney General's office for review and possible release; all of these documents are now in the possession of plaintiffs. Id. at 5. The remaining category contains the documents at issue in this motion, and the U.S. Attorney's Office claims that they are privileged. Id. According to the U.S. Attorney's Office, "the documents at issue fall into four categories: (1) internal communications between USAODC employees, (2) communications between USAODC employees and witnesses including DOC employees, (3) USAODC internal memorandum, and (4) notes and drafts prepared by prosecutors and/or their staff." Id. Plaintiffs only seek to compel the case file for Amobi's criminal case, United States v. Stephen Amobi, CMD 12120-06. Mot. to Compel #2 at 3. The U.S. Attorney's Office claims that the case file is protected by work-product privilege, the deliberative process privilege, and by prosecutorial immunity. USAO's Opp. at 1.

Defendants object to plaintiffs' motion on the grounds that plaintiffs failed to follow the procedure dictated by Federal Rule of Civil Procedure 37(a). See Defendants' Opposition to Plaintiffs' Motion to Compel Production of Documents [#89] ("Defs. Opp. Mot. to Compel #2"). Rule 37(a) requires a party to place other parties and all affected persons on notice when making a motion for an order compelling discovery. Fed. R. Civ. P. 37(a). Plaintiffs' did not provide any evidence that they placed the U.S. Attorney's Office on notice of the motion. Defs. Opp. Mot. to Compel #2 at 2. Further, despite providing certification that plaintiffs had in good faith conferred or attempted to confer with defendants about the motion, plaintiffs failed to provide the certification in regards to the U.S. Attorney's Office. See Mot. to Compel #2. Rule 37(a) requires a party making a motion to compel to include in the motion a certification that the party in good faith conferred or attempted to confer "with the person or party failing to make

disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a).

Plaintiffs should have provided a certification that they had attempted to confer with the U.S.

Attorney's Office; they failed to do so.  The U.S. Attorney's Office, the party with which

plaintiffs should have conferred, however, does not object to the motion on these grounds, and so

I will consider the arguments presented by the U.S. Attorney's Office against production but

noting that plaintiff's failure to comply with Rule 37(a) will not be tolerated after this one

failing.

It is settled beyond all question that a prosecutor has absolute immunity from liability for

acts "performed by a prosecutor in his or her official capacity as an advocate for the state in the

course of judicial proceedings." Atherton v. District of Columbia Office of the Mayor, 567 F.3d

672, 683 (D.C. 2009).  Accord Moore v. Valder, 65 F.3d 189, 193 (D.C. Cir. 1995).  Moreover,

even if the prosecutor's actions at issue are administrative and "those investigatory functions that

do not relate to an advocate's preparation for the initiation of a prosecution or for judicial

proceedings," Atherton, 567 F.3d at 683 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273

(1993)), they are cloaked with qualified immunity that must be defeated before discovery can

proceed in a lawsuit based on the prosecutor's actions.  See, e.g., Siegert v. Gilley, 500 U.S. 226,

232 (1991).  Indeed, the protection awarded is so complete that an appeal will lie from the denial

of the prosecutor's claim of immunity even though the order denying the immunity would

otherwise be interlocutory. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

Thus, had plaintiffs sued the prosecutor himself or herself and sought discovery by taking

his or her deposition, plaintiffs would have had to (1) defeat the claim of absolute immunity by

establishing that the acts of the prosecutor were not performed in his or her official capacity; (2)

if they won on that point, they would have to defeat a claim of qualified immunity by

establishing that the prosecutor violated a statutory or constitutional right that was clearly

established of which a reasonable person would have none (Atherton, 567 F.3d at 689); and (3)

defend their victory on points 1 or 2 in an interlocutory appeal.

Yet, as plaintiffs would have it, they can take the deposition of the Assistant United

States Attorney who prosecuted Amobi and delve into why and how he was prosecuted by doing

nothing more than serving a notice of deposition, because they are not suing the prosecutor or

the United States.  It is hard to imagine a situation where the difference in result is less justified

by the distinction that could be drawn between the two situations.  The immunity prosecutors

enjoy is not a badge of office and titular.  It is animated by the profound societal concern that

prosecutors be free to perform their vital duties courageously and without fear that their actions

will be judged in hindsight in a civil action.  In Imbler v. Pachtman, 424 U.S. 409 (1976), the

Supreme Court stated:

> The common-law immunity of a prosecutor is based upon the same
> considerations that underlie the common-law immunities of judges
> and grant [sic] jurors acting within the scope of their duties.  These
> include concern that harassment by unfounded litigation would
> cause a deflection of the prosecutor's energies from his public
> duties, and the possibility that he would shade his decisions instead
> of exercising the independence of judgment required by his public
> trust.

Id. at 422.

Those interests are as much engaged whether the inquiry is made of the prosecutor by his

putative victim or by a third party.  Note here that the prosecutor's immunity and his amenability

to discovery does not yield, for example, to a claim that the prosecutor withheld exculpatory

evidence. Moore, 65 F.3d at 194.  If that is true when the victim sues and claims that the

prosecutor violated his constitutional rights, then *a fortiorari*, it has to be true when the prosecutor is compelled to testify in a lawsuit by a third party when no one claims that the prosecutor did any thing wrong.

I therefore will not permit the Assistant's deposition to be taken.  Further, in my view, the immunity that the prosecutor enjoys from deposition shields with the same force the contents of the prosecutor's file insofar as that file pertains to, relates, or evidences acts "performed by a prosecutor in his or her official capacity as an advocate for the state in the course of judicial proceedings." Atherton, 567 F.3d at 683 (citations ommitted).

Indeed, it may not be necessary to bottom the analysis on that principle.  The United States Attorney represents that he has given to the Attorney General those documents previously given to the United States by the District of Columbia, and I will order their production by the District of Columbia now.  All that remains are the notes and other materials created by the United States Attorney incident to the prosecution and trial of Amobi.  Clearly, insofar as they yield information pertaining to the decision to prosecute Amobi, they are pre-decisional and deliberative.  Once the prosecution began, they were prepared for trial.  Thus, all the documents in the folder meet either the fundamental requirements for the application of the deliberative process and work-product[5] privileges or both.  Plaintiffs provide no argument whatsoever as to why those privileges do not apply nor any reason to question the government's representation that they do.  Indeed, plaintiffs do not address their application whatsoever.  There being no reason whatsoever to doubt the applicability of either privilege to this case or to doubt the government's representation as to the nature of the documents that now remain in its file, I will

---

[5] Attorneys for the United States may claim the work-product privilege.  See N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975) (citations ommitted).

deny plaintiffs' motion to compel.

### IV. Motion to Extend Discovery

Plaintiffs' seeks an extension of discovery; however, the motion is moot because the date for the extension has passed.  Nevertheless, I will grant a 30-day extension of discovery from the date of this order to allow the parties to conclude discovery in regards to the discrete areas addressed in this memorandum opinion.

### V. Conclusion

For the reasons herein discussed, the court will deny Defendants' Motion to Quash the Subpoena Served on Jonathan O'Neill, Attorney Advisor, and For a Protective Order [#54], grant Plaintiffs' Motion for Determination of Claim of Privilege [#70], deny Plaintiffs' Motion to Compel Production of Documents [#79], and find as moot Plaintiffs' Motion to Extend Discovery [#80].  The court will also allow a 30-day extension of discovery from the date of this order in regards to the discrete areas addressed in this memorandum opinion.  An order accompanies this memorandum opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE