**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEPHEN IFEANYI AMOBI | * | |
| NGOZI AMOBI | * | |
| | * | |
| | * | |
| v. | * | Civil No. – BEL-08-1501 |
| | * | |
| DISTRICT OF COLUMBIA | * | |
| GOVERNMENT, ET AL. | * | |

\* \* \* \* \* \*

**OPINION**

Stephen Amobi ("Amobi") and his wife, Ngozi Amobi, have instituted this action against the District of Columbia, Devon Brown, Stanley Waldren, Robert Clay, Albert White, Joan Murphy, and Denise Shell.[1]  Amobi claims that his rights were violated as a result of the events described in this Opinion.  Defendants, other than Albert White, have filed a motion for judgment on the pleadings or for summary judgment.  The motion will be granted.  Judgment also will be entered in favor of Albert White because he is entitled to summary judgment for the same reasons as Waldren and Clay.[2]

I.

On June 4, 2006, Amobi was working as a correctional officer at the District of Columbia jail.[3]  He had been ordered to release Derrick Brown, an inmate who had been serving a sentence over a period of weekends.  Brown is transgendered, and he was not happy about the treatment

---

[1] This case was originally assigned to Judge Legg of this court pursuant to an intercircuit assignment.  Judge Legg is retiring from the bench later this year, and he is transferring the cases that had been assigned to him.  This case was transferred to me, and I have also received an intercircuit assignment to handle it.  In deciding the pending motion, I have reviewed all of the memoranda that have been filed, as well as letters that counsel submitted to Judge Legg, to address certain questions he raised at a hearing.
[2] It appears from the docket that White was served with process, but otherwise the docket is silent as to his whereabouts or status.
[3] The facts are, of course, stated in the light most favorable to plaintiff.

he had been receiving at the jail.  Amobi was observed by three of the defendants, Waldren, White, and Clay, to restrain the inmate Brown.  They called to Amobi to release Brown, and he immediately did so.

Brown apparently wanted to create a scenario that he thought would be to his benefit. Therefore, as he later admitted at a criminal trial in which Amobi was the defendant, he baited Amobi into a physical confrontation, first "through a barrage of verbal insults" and then by hitting Amobi.  As Amobi acknowledges, Waldren, White, and Clay did not hear or see Brown's provocations.  After the incident, Waldren informed Amobi that he was being placed on administrative leave.  When Amobi tried to leave the facility and go home, Waldren, White, Clay, and defendant Devon Brown, the Director of the District of Columbia Department of Corrections, ordered that he return to the administrative area of the DC Jail.  Clay then contacted the Metropolitan Police Department ("MPD") to have Amobi arrested for assault.  Amobi was arrested by the MPD, taken in handcuffs from the DC Jail, and was incarcerated until his release pending trial.  The MPD officer who made the arrest did not read Amobi's own incident report or review other evidence favorable to Amobi.

On July 12, 2006, Amobi was proposed for summary removal from his position.  He exercised his right under his union's Collective Bargaining Agreement to have a hearing before a disinterested hearing officer.  Phuoc Nguyen was assigned as the hearing officer.  After holding a hearing on August 3, 2006 and reviewing the evidence, Nguyen found inadequate grounds to terminate Amobi on grounds of malfeasance, and she determined that he should be reinstated. She issued a written recommendation to that effect to Director Brown.  The Collective Bargaining Agreement required that Nguyen's recommendation be sustained, reduced, or remanded.  On August 21, 2006, Director Brown decided it should be remanded.  Otherwise,

under the CBA and applicable law, Brown would not have been able to increase the penalty imposed upon Amobi, and Nguyen's recommendation that Amobi be reinstated would have had to be followed.  The remand memorandum was prepared by Defendant Murphy.  As set forth below, at a subsequent arbitration proceeding, Nguyen testified that she felt pressured by Director Brown and Defendant Shell to modify her opinion.  Nguyen did change her decision and recommended that Amobi be removed from his position.  Director Brown adopted this recommendation and ordered that Amobi be discharged.

Amobi was charged with a criminal offense.  The first charge against Amobi was dismissed because the Department of Correction failed to produce in discovery certain photographs and a videotape in its possession.  However, Department officials persuaded the U.S. Attorney's Office to reinstitute the case.  Several documents that were produced to the U.S. Attorney's Office indicated that the inmate, Derrick Brown, had been interviewed after the incident.  However, no report of any such interview was turned over to Amobi's defense counsel in the criminal case.

On June 4, 2007, at the conclusion of a nonjury trial, Amobi was acquitted.  During the trial Derrick Brown testified that on the day of the June 4, 2006 incident he was impatient with the delay in his release and, as indicated above, on cross-examination he admitted that he struck Amobi in an attempt to induce Amobi to assault him.

Despite the acquittal, Director Brown went forward with an administrative action to remove Amobi from his position.  After a hearing before a hearing examiner, Brown discharged Amobi.  Amobi appealed the decision to an arbitrator, as he had the right to do.  Prior to the hearing, Amobi was provided with some documents that indicated Derrick Brown had been interviewed after the incident, but again no interview report was turned over.

During the arbitration hearing Amobi called Nguyen as a witness, and she testified that she had felt threatened into changing her original decision recommending that Amobi be reinstated, and that Defendant Shell had directed her to change her original decision.  The arbitrator found that Amobi had been wrongfully removed from his position and ordered his reinstatement with backpay on December 27, 2007.  The Department of Corrections did not immediately comply with the arbitrator's award, and Amobi filed an action in the Superior Court for the District of Columbia to compel the Department's compliance with the award.  Ultimately, the Department did comply with the award when ordered to do so by the Superior Court on May 16, 2008.

During the course of discovery in this action, a document was produced to Amobi's counsel purporting to memorialize the interview with Derrick Brown.  Although the interview allegedly was conducted on the day of the incident, it was not was prepared until approximately five weeks later, on July 14, 2006.  The memorandum stated that "Inmate Brown stated that he wanted to pursue criminal charges against Officer Amobi for the assault."  Amobi contends that the memorandum was fabricated after-the-fact.  During a deposition in this case, Valerie Beard, an investigator with the Office of Internal Affairs of the Department of Corrections, who prepared the memorandum, testified that although she had not personally interviewed Brown, she overheard Brown telling Wanda Patten, the chief of the Office of Internal Affairs, what is recorded in the memorandum.

## II.

At the outset, I note there are certain aspects of this case that are disturbing.  First, it is unfortunate that Amobi was arrested and prosecuted without being able to tell his side of the story and without MPD and the U.S. Attorney's Office reviewing evidence favorable to him.

4

Second, Director Brown's refusal to accept the recommendation made by Ms. Nguyen and his alleged direction to her to change her recommendation call into question the integrity of the hearing process.  Third, a report should not be prepared after the fact purporting to be a contemporaneous description of what had occurred.

All of these things said, however, I am satisfied that Amobi has no cognizable claim against any of the defendants.  First, Waldren, White, and Clay witnessed Amobi restrain inmate Derrick Brown without observing Brown provoking Amobi.  There was nothing unlawful about them reporting what they saw.[4]  If there was any inadequacy in the investigation, it lies within the purview of the MPD, which is not a defendant in this action.

Second, Director Brown was acting entirely within his authority in remanding Nguyen's decision.  Of course, he should not have pressured her, directly or indirectly, into changing her decision and recommendation.  He also should have considered carefully the recommendation she had made.  However, it must be remembered that what had been reported to Director Brown in the first instance is that a correctional officer had physically restrained a vulnerable inmate at the D.C. Jail.  It certainly was not irresponsible of him to consider that an officer who engaged in such conduct should be discharged.  In that regard, Nguyen's initial written recommendation was quite conclusory in nature, and there is nothing in the remand memorandum to suggest that Director Brown rejected the recommendation for any reason other than what he believed was in the best interests of the inmates for whom, and the institution for which, he was responsible.[5]

---

[4] I note that Amobi does not claim that Waldren, White, Clay, or any other defendant acted out of personal malice or with intent to discriminate against him unlawfully.

[5] It might also be noted that whatever pressure Nguyen may have felt, she had a duty to render her decision and make a recommendation as the disinterested hearing officer.  If she had performed that duty after the remand, Amobi would not have been discharged because Director Brown could not impose any penalty greater than the one she recommended.

Third, preparation of a document after-the-fact in a form intended to suggest it was prepared contemporaneously with the occurrence of an event clearly is inappropriate. However, Amobi's claims here are not based upon the report of interview allegedly conducted of Derrick Brown. Indeed, the person who allegedly prepared the fabricated interview is not a defendant in this action.

III.

I will now turn to the specific claims asserted by Amobi.[6]

### A.  Claims for False Arrest and Malicious Prosecution

Amobi asserts both constitutional and common law claims for false arrest and malicious prosecution. The only defendants against whom any factual allegations are made in regard to those claims are Clay, Waldren, White, and Director Brown. The claims are clearly insufficient as a matter of law to those defendants because Clay, Waldren, and White merely reported what they observed, and their observations constituted probable cause for the arrest and prosecution of Amobi. To the extent that Amobi's claim is that the investigation conducted by the MPD should have included interviewing Amobi and considering other evidence that might be favorable to him, he should have asserted claims against MPD – which arrested Amobi – and the U.S. Attorney's Office – which chose to prosecute him. Although any such claims may well have failed as a matter of law, the fact that Amobi has no claim against the police department whose officers arrested him and the prosecutor's office that chose to lodge charges against him does not mean that he has a claims against witnesses who reported what they observed or the person(s)

---

[6] Because I find that defendants are entitled to summary judgment on other grounds, I need not decide their arguments relating to untimely notice under D.C. Official Code, § 12-309, application of the intracorporate conspiracy doctrine, *res judicata*, the unavailability of punitive damages against them, and the District of Columbia's entitlement to judgment because of the absence of evidence of any pattern, practice, or procedure of unlawful conduct.

who called in the police to investigate and asked the prosecuting officials to proceed with a criminal case.

### B.  Claim that Director Brown's Remand was Unlawful

Although plaintiff does not so specify, it appears that this claim is asserted against defendants Brown, Murphy, and Shell.

The claim is without merit.  As an initial matter, it is to be noted that Nguyen's first report and recommendation was conclusory in nature.  Moreover, it was issued before Amobi's criminal trial – at which Derrick Brown admitted that he intentionally provoked Amobi – was held.  Thus, Director Brown made his removal decision against the background that he understood that a correctional officer had unnecessarily used force against a vulnerable inmate.[7]

Further, it is undisputed that under the terms of the Collective Bargaining Agreement Brown was authorized to remand a recommendation made by a hearing officer for further proceedings.  Although Amobi claims that the law is now clear that Brown could not impose any penalty more severe than that recommended by the hearing officer, it is not at all clear that the law prohibited Brown from imposing the penalty recommended after remand by Nguyen.  As noted above, Nguyen recommended Amobi's removal from office in her second decision and recommendation.  In any event, whatever the current state of the law, there is no evidence that at the time that Brown made the remand decision, the law prohibited him from taking the action he took.

---

[7] It might also be noted that Amobi has suffered no out-of-pocket loss.  When he was reinstated to his position, he was also awarded backpay.

### C.  Defamation

Amobi asserts a common law claim for defamation.[8]  That claim is time-barred because this action was instituted more than one year after his arrest and detention, and in the District of Columbia there is a one-year statute of limitations for defamation claims.  D.C. Official Code, § 12-301(4).  Moreover, because, as stated above, the observations made by Clay, Waldren, and White provide probable cause for Amobi's arrest and detention, there is no evidence that the defendants engaged in any wrongful publication that harmed Amobi's reputation.

### D.  Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must establish, *inter alia*, that a defendant engaged in "extreme and outrageous conduct" that caused him "severe emotional distress."  *See, e.g., Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984).  Here, there is no evidence that any of the defendants engaged in extreme or outrageous conduct or that Amobi suffered severe emotional distress.

### E.  Violation of Procedural Due Process

Self-evidently, Amobi cannot assert a claim for violation of procedural due process in connection with the actual termination of his employment.  He was afforded rights to challenge the termination of his employment under the Collective Bargaining Agreement and applicable law.  Moreover, when he asserted those rights, he was reinstated to his position with backpay.  Therefore, the only violation of procedural due process that Amobi asserts is in connection with the decision made by Director Brown to remand Nguyen's initial recommendation that he be

---

[8] In his memorandum opposing defendants' motion, Amobi argues that he has also asserted a constitutional claim for damage to his reputation.  In fact, he has not done so.  Assuming, however, that he has asserted such a claim, it would fail because there is no evidence that defendants engaged in wrongful conduct that damaged his reputation.  As stated above, probable cause existed for his arrest and detention.

reinstated.  Apparently, Amobi claims that he had a constitutional right to be heard before that decision was made.  He cites no authority to support this proposition, and in light of the fact that Director Brown was clearly authorized by law to remand the recommendation made to him by Nguyen, at the least Director Brown is entitled to qualified immunity as to this claim.

### F. Aiding and Abetting and Loss of Consortium

Amobi's claims for aiding and abetting and the claim for loss of consortium depend upon Amobi having some other viable claims against at least one of the defendants.  Because, for the reasons I have stated, I have concluded that he has no such claim, the aiding and abetting and loss of consortium claims fail as well.

A separate order effecting the rulings made in this Memorandum is being entered herewith.


Date: August 9, 2012_____                    _____/s/__ _____
                                              J. Frederick Motz
                                              United States District Judge