## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEPHEN IFEANYI AMOBI, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-cv-1501 (KBJ) |
| DEVON BROWN, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In 2006, the D.C. Department of Corrections ("DOC") summarily removed

Plaintiff Stephen Ifeanyi Amobi from his position as a correctional officer.  (*See* 2d

Am. Compl., ECF No. 188, ¶¶ 12, 14.)  Amobi successfully contested his removal

through administrative proceedings, and was reinstated to his position.  (*See id.* ¶ 19.)

He then initiated the instant legal action against the District of Columbia and multiple

DOC officials (*see id.* ¶ 2), seeking damages for various alleged violations of federal

and D.C. law with respect to his removal (*see id.* ¶¶ 30–40, 46–56).  Amobi's federal

claims were ultimately dismissed, but the majority of his D.C. law claims proceeded to

trial (*see* Ct. Summ. of Remaining Counts for Trial, ECF No. 270), where a jury

determined that one of the individual defendants, Devon Brown, had engaged in

malicious prosecution of Amobi's removal (*see* Verdict Form, ECF No. 301, at 1).[1]

Following the jury's verdict, the Clerk of Court entered judgment in Amobi's favor on

his malicious prosecution of administrative removal claim and in favor of Brown and

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

the other defendants on all remaining claims.  (*See* J. on the Verdict, ECF No. 304, at 1.)

Before this Court at present is Brown's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, to Alter or Amend the Judgment.  (*See* Def.'s Renewed Mot. for J. as a Matter of Law or, Alternatively, Mot. to Alter or Amend J. ("Def.'s Mot."), ECF No. 321.)  In his motion, Brown contends that the D.C. Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.01 *et seq.*, preempts Amobi's malicious prosecution of administrative removal claim, because the CMPA provides the exclusive remedy for virtually all workplace grievances that are brought by employees of the District of Columbia.  (*See* Def.'s Mot. at 11–14; Def.'s Suppl. Mem. in Supp. of Mot. ("Def.'s Suppl. Mem."), ECF No. 327, at 7–8.)  Brown argues further that, because Amobi failed to exhaust his administrative remedies under the CMPA, the Court must dismiss Amobi's claim either for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted.  (*See* Def.'s Suppl. Mem. at 7–8, 14.)  In the alternative, Brown insists that the jury lacked a "legally sufficient evidentiary basis for [its] finding of liability" on Amobi's malicious prosecution of administrative removal claim, and he therefore asks the Court to reverse the judgment against him.  (Def.'s Mot. at 14.)  Amobi opposes Brown's motion on both grounds, arguing that the CMPA does not bar his claim, and that the evidence presented at trial supports the jury's verdict.  (*See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 324, at 6–7, 8–14; Pl.'s Resp. to Def.'s Suppl. Mem. ("Pl.'s Suppl. Mem."), ECF No. 329, at 4–5.)

This Court has carefully considered the parties' submissions in this case, and for the reasons discussed fully below, it concludes that Amobi's malicious prosecution of administrative removal claim must be dismissed under Rule 12(b)(6) for failure to exhaust his administrative remedies under the CMPA's exclusive remedial framework. Consequently, Brown's motion will be **GRANTED** insofar as it seeks dismissal of the malicious prosecution of administrative removal claim under Rule 12(b)(6), and the judgment against Brown with respect to that claim will be **VACATED**. A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

### A.    Amobi's Removal And The Administrative Proceedings Below

Amobi was working as a correctional officer at the D.C. Jail on June 4, 2006, when he was ordered to escort an agitated inmate from one section of the jail to another. (*See* 2d Am. Compl. ¶¶ 5–6; Arbitration Op., Ex. 9 to Def.'s Suppl. Mem., ECF No. 327-9, at 12.) A verbal altercation ensued between Amobi and the inmate, and when the inmate escalated the fight by punching Amobi in the forearm, Amobi restrained the inmate by pinning him up against the wall. (*See* 2d Am. Compl. ¶¶ 6–7; Arbitration Op. at 12–14.) A DOC official who witnessed Amobi's use of force called the police (*see* 2d Am. Compl. ¶¶ 8–9), and an officer subsequently arrived at the scene and arrested Amobi for assault (*see id*. ¶¶ 9–10; Arbitration Op. at 14). Following this sequence of events, Brown—who was serving as the Director of DOC at the time— summarily removed Amobi from his position. (*See* 2d Am. Compl. ¶ 12; Summ. Removal Decision, Ex. 3 to Def.'s Suppl. Mem., ECF No. 327-3, at 1; Arbitration Op. at 14.)

Brown's removal decision was then reviewed by a DOC hearing officer.  (2d Am. Compl. ¶ 12; Arbitration Op. at 16.)  In conjunction with this administrative review, the officer held a hearing and considered the available evidence, and she eventually and ultimately determined that Amobi had acted in self-defense, such that his termination was unwarranted.  (*See* 2d Am. Compl. ¶ 12; Hr'g Officer Report, Ex. 5 to Def.'s Suppl. Mem., ECF No. 327-5, at 2.)  Brown disagreed with the hearing officer's analysis of the evidence, however.  Therefore, acting in his capacity as agency head, Brown remanded the matter to the hearing officer for further consideration.  (*See* 2d Am. Compl. ¶ 13; Remand Order, Ex. 6 to Def.'s Suppl. Mem., ECF No. 327-6, at 2– 4.)  On remand, the hearing officer changed her recommendation and concurred with Brown's removal decision.  (*See* 2d Am. Compl. ¶ 14; Hr'g Officer Report on Remand, Ex. 7 to Def.'s Suppl. Mem., ECF No. 327-7, at 2.)

Brown issued a final decision confirming Amobi's removal on August 29, 2006, which Amobi and his union subsequently challenged pursuant to the terms of his Collective Bargaining Agreement.  (*See* 2d Am. Compl. ¶¶ 14, 16; Arbitration Op. at 17.)  Meanwhile, the District moved forward with a criminal assault case against Amobi, and the case proceeded to trial in D.C. Superior Court, where a judge eventually found that Amobi was not guilty of assault.  (*See* 2d Am. Compl. ¶ 16; Arbitration Op. at 12, 14.)  In light of his acquittal, Amobi requested immediate reinstatement in lieu of contesting his removal through arbitration (*see* 2d Am. Compl. ¶ 17), and an attorney representing the District also wrote a memorandum directed to Brown that recommended reinstating Amobi instead of pursuing arbitration (*see id.*; Ex. X to Pls.' Sealed Mot. for Determination of Privilege, ECF No. 70-54, at 1, 4.)  At Brown's

apparent insistence (*see* Trial Tr., ECF No. 315, at 1082:1–10), the parties nevertheless went forward with arbitration proceedings, and on December 21, 2007, the arbitrator also ruled in Amobi's favor, ordering that he "be reinstated with full back pay and benefits" (Arbitration Op. at 24).

### B.     Procedural History

Amobi filed the instant legal action against the District of Columbia, DOC, Brown, and five other DOC officials in D.C. Superior Court on June 4, 2008.  (*See* Ex. 1 to Notice of Removal, ECF No. 1-1, at 13–14.)  The case was removed to the U.S. District Court for the District of Columbia shortly thereafter (*see* Notice of Removal, ECF No. 1, at 2–3), and on November 10, 2016, Amobi filed his second amended complaint—the operative complaint in this case, which dropped DOC and one of the individual officials as defendants (*see* 2d Am. Compl. ¶ 2)—and raised a number of federal and D.C. law claims relating to Amobi's arrest and removal (*id.* ¶¶ 23–56).[2] The parties subsequently engaged in extensive briefing, and this Court issued a series of rulings on various disputed issues (*see, e.g.*, Order Granting in Part and Den. in Part Defs.' Partial Mot. for Summ. J., ECF No. 201, at 1–2; Order Granting Summ. J. to Defs. on Count I, ECF No. 257, at 1), such that, by June of 2018, only four common law tort claims remained: malicious prosecution of criminal proceeding, malicious prosecution of administrative removal, aiding and abetting malicious prosecution of administrative removal, and intentional infliction of emotional distress (*see* Ct. Summ. of Remaining Counts for Trial at 1).

---

[2] The second amended complaint named Amobi's wife as a plaintiff in the litigation (*see* 2d Am. Compl. ¶¶ 1, 53–54), but the parties later agreed to dismiss the sole claim for relief that she had asserted (*see* Joint Praecipe of Dismissal, ECF No. 261, at 1).

The case proceeded to a jury trial on June 22, 2018.  (*See* Min. Entry of June 22, 2018.)  After Amobi presented his case-in-chief to the jury, the defendants moved for judgment as a matter of law on all claims.  (*See* Trial Tr. at 1036:6–7, 1045:9–14.)  In the context of this motion, the defendants argued not only that Amobi had failed to offer sufficient evidence for each claim (*see id.* at 1036:9–1037:4, 1045:9–12), but also that the CMPA deprived the Court of subject-matter jurisdiction over Amobi's claims for malicious prosecution of administrative removal, aiding and abetting malicious prosecution of administrative removal, and intentional infliction of emotional distress (*see id.* at 1049:3–9).  The Court denied the motion without prejudice, explaining that the defendants could reassert their contentions regarding the sufficiency of the evidence at the close of the case.  (*See id.* at 1045:13–19, 1048:14–23.)  And the Court further declined to entertain the defendants' CMPA-preemption argument during the trial, but it expressly posited that, if necessary, the defendants could raise the issue again in a post-trial motion.  (*See id.* at 1088:1–10.)

The defendants renewed their motion for judgment as a matter of law after the close of evidence (*see* Trial Tr., ECF No. 317, at 1232:23–24), and the Court granted the motion with respect to Amobi's intentional infliction of emotional distress claim, finding that the evidence presented at trial was insufficient to support a verdict in Amobi's favor (*see id.* at 1292:8–14).  The Court denied the rest of the motion, and submitted the three remaining claims to the jury.  (*See* Trial Tr., ECF No. 318, at 1392:22–1393:4.)

The jury rendered its verdict on July 2, 2018.  (*See* Verdict Form at 3.)  It found that Brown had engaged in malicious prosecution of Amobi's administrative removal,

but that Amobi was not entitled to an award of compensatory or punitive damages with respect to this established claim.  (*See id.* at 1–2.)  The jury otherwise returned a verdict in favor of the defendants.  (*See id.*)  In light of the jury's verdict, the Clerk of Court entered judgment against Brown on Amobi's malicious prosecution of administrative removal claim, and in favor of Brown and the other defendants on all remaining counts. (*See* J. on the Verdict at 1.)

## C.  The Instant Motion

On July 30, 2018, Brown filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, or, in the alternative, a motion to alter or amend the judgment under Federal Rules of Civil Procedure 59(e) and 60.  (*See* Def.'s Mot. at 1.)  In his motion, Brown reasserts the argument that the CMPA precludes Amobi's successful malicious prosecution of administrative removal claim (*see id.* at 11), and contends that the jury lacked sufficient evidence to support its finding of liability in any case (*see id.* at 14; *see also* Def.'s Reply to Pl.'s Opp'n, ECF No. 325, at 11–16.  As most relevant here, Brown explains in his motion—and in a supplemental brief on the matter—that the CMPA is a comprehensive personnel system that creates an exclusive remedy for almost all workplace disputes (*see* Def.'s Mot. at 11; Def.'s Suppl. Mem. at 14), and that its scheme includes the potential to grieve Amobi's challenge to Brown's handling of his administrative removal (*see* Def.'s Mot. at 13; Def.'s Suppl. Mem. at 23–24).[3]  And, according to Brown, the "exclusivity of the CMPA's remedial scheme" imposes a jurisdictional bar to suit in the D.C. courts

---

[3] Brown submitted this supplemental brief pursuant to an order of this Court requesting additional briefing on the scope and jurisdictional implications of his CMPA preemption argument.  (*See* Order for Suppl. Briefing, ECF No. 326, at 3–5 (directing Brown to submit a supplemental brief and ordering Amobi to file a response).)

(Def.'s Suppl. Mem. at 9), meaning that D.C. employees cannot litigate a workplace-related claim in the local courts without first exhausting the administrative procedures that the CMPA prescribes (*see id.* at 29–30)—and, even then, the CMPA limits the role of a court to reviewing the administrative decision that was issued during the proceedings below, rather than reviewing the claim *de novo* (*see id.* at 30).

As Brown acknowledges in his supplemental brief, however, whether a "state-created remedial scheme [like the CMPA] can ever deprive *an Article III court* of jurisdiction" is an unsettled question in the D.C. Circuit (*see id.* at 9 (emphasis added)), and federal circuit courts across the country have treated the issue in differing ways (*see id.* at 10–13). Brown argues nevertheless that, regardless of whether an "exclusive remedy provision of a state statute" is considered jurisdictional or non-jurisdictional in federal court (*id.* at 11 (internal quotation marks and citation omitted)), federal courts routinely dismiss state-law claims that are preempted by such provisions, either for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)—if the court treats the state-law rule as a jurisdictional bar to suit—or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)—if the court treats the state-law rule as non-jurisdictional (*see id.* at 10–13). Thus, Brown urges this Court to dismiss the claim in any event, on the grounds that the CMPA provides the exclusive remedy for Amobi's work-related dispute and that Amobi failed to pursue his claim through the CMPA's established framework. (*See id.* at 23–27, 29–30.)

For his part, Amobi's responses to Brown's motion and supplemental brief do not address the jurisdictional implications of the CMPA. Instead, Amobi insists that the CMPA does not pertain to his claim for malicious prosecution of administrative

8

removal.  (*See* Pl.'s Suppl. Mem. at 4–7.)  For example, Amobi asserts that he could not

have pursued his claim under the CMPA, because "[t]he CMPA does not permit an

employee to challenge an adverse action through the grievance process, win at

arbitration, and then file another grievance regarding his employer's handling of the

prior successful grievance."  (*Id.* at 5.)  Amobi further maintains that, even if he could

have brought his claim under the CMPA, "the arbitrator's decision returning him to

work and awarding him back pay was inadequate to render [him] whole as a result of

the malicious behavior of Defendant Brown."  (*Id.* at 6.)  Indeed, according to Amobi,

because "'government employees only lose common law rights of recovery if the statute

provides redress for the wrongs they assert'" (*id.* at 6–7 (quoting *Robinson v. District of

Columbia*, 748 A.2d 409, 411 (D.C. 2000))), and the CMPA does not authorize an

award of non-economic or punitive damages, "the only way for [him] to seek redress for

all the damages caused by Defendant Brown's conduct was for him to" file the instant

lawsuit and "seek judicial relief" (*id.* at 7).  Finally, as for Brown's argument that the

jury lacked sufficient evidence to find him liable for malicious prosecution of

administrative removal, Amobi contends that the jury heard ample evidence to support

its finding, and that the Court should not disturb the jury's verdict as a result.  (*See*

Pl.'s Opp'n at 8, 14.)

The parties' arguments concerning Amobi's malicious prosecution of

administrative removal claim are now ripe for this Court's review.

## II.    LEGAL STANDARDS

### A.    Core Principles Of The CMPA

In 1978, the D.C. Council enacted the CMPA to create a "uniform system of

merit personnel administration" that would "replace a disjointed, decentralized[,]" and "inefficient" federal framework. *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C. 1991) (internal quotation marks and citations omitted). To that end, the CMPA provides, "[w]ith few exceptions, . . . the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind[,]" *Robinson*, 748 A.2d at 411, including "any complaint arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions[,]" *Lattisaw v. District of Columbia*, 905 A.2d 790, 793 (D.C. 2006) (internal quotation marks and citation omitted).[4] Under the CMPA, employees can challenge "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees" by filing a grievance, D.C. Code § 1-603.01(10); *see also id.* § 1-616.53, or they can contest an adverse action involving "removal, a reduction in grade, or suspension of 10 days or more[,]" by filing an appeal with the D.C. Office of Employee Appeals, *id.* § 1-616.52(b). Moreover, an employee can choose to have his grievance or appeal "resolved either under detailed CMPA procedures or under a CMPA-sanctioned collective bargaining agreement . . . but not both." *Thompson*, 593 A.2d at 625; *see also* D.C. Code § 1-616.52(d), (e).

Depending on the type of claim that an employee asserts, and also the particular method through which the employee pursues his claim under the CMPA, an employee is statutorily authorized to ask the D.C. Superior Court to review an administrative decision or arbitration award. *See* D.C. Code §§ 1-605.02(6), 1-606.03(d), 1-617.13(c);

---

[4] The exceptions to the CMPA's exclusive remedial scheme, which are not relevant here, involve discrimination claims that are subject to the D.C. Human Rights Act, and "common-law claims that [are] premised on, and fundamentally related to a sexual harassment claim[.]" *Robinson*, 748 A.2d at 411 (internal quotation marks and citation omitted).

*see also Thompson*, 593 A.2d at 634 (noting that the CMPA contemplates a "reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum"). And, notably, under D.C. law, such an employee may not bring his claim under the CMPA to D.C. Superior Court until he has exhausted the applicable administrative grievance procedures, *see, e.g.*, *Thompson*, 593 A.2d at 635; *Johnson v. District of Columbia*, 552 F.3d 806, 810–11 (D.C. Cir. 2008); indeed, even if "a substantial question exists as to whether the CMPA applies," the employee must first follow the CMPA's procedures and present the claim to the "appropriate District agency" before filing a legal action in court, *White v. District of Columbia*, 852 A.2d 922, 925 (D.C. 2004) (internal quotation marks and citation omitted).

## B.     Exhaustion Requirements In Federal Court

Where, as here, a question arises regarding the plaintiff's exhaustion of administrative remedies under a particular statutory scheme, courts in this circuit distinguish between two types of exhaustion requirements. The first type, which is called "non-jurisdictional exhaustion," is a "judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). This prudential rule exists to "giv[e] agencies the opportunity to correct their own errors, afford[] parties and courts the benefits of agencies' expertise, compil[e] a record adequate for judicial review, [and] promot[e] judicial efficiency[.]" *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 414 (D.C. Cir. 1998). However, because this type of exhaustion is non-jurisdictional in nature, courts may also excuse a plaintiff's failure to exhaust administrative remedies, and they can do so if they find that "the litigant's interests in immediate judicial review outweigh the

government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992) (internal quotation marks and citation omitted).

The second type of exhaustion, referred to as "jurisdictional exhaustion," is a mandatory requirement that is "rooted[] not in prudential principles, but in Congress' power to control the jurisdiction of the federal courts." *Avocados Plus*, 370 F.3d at 1247. An exhaustion requirement is considered jurisdictional if the statute that mandates exhaustion "contain[s] [s]weeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion[.]" *Id.* at 1248 (second alteration in original) (internal quotation marks and citation omitted). And in the absence of such "clear" and "unequivocal" language, courts must "presume exhaustion is non-jurisdictional[.]" *Id.* (internal quotation marks and citation omitted). If an exhaustion requirement is deemed to be jurisdictional, however, it operates as an unequivocal requirement: courts may not excuse a plaintiff's failure to exhaust his administrative remedies. *See id.* at 1247.

### C.    Motions To Dismiss On Exhaustion Grounds

When it appears that a plaintiff has failed to follow a jurisdictional exhaustion requirement, the defendant may file a motion to dismiss the claim under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Fernandez v. Donovan*, 760 F. Supp. 2d 31, 34–35 (D.D.C. 2011). A Rule 12(b)(1) motion may be made at any time, *see, e.g.*, *Rattigan v. Holder*, 636 F. Supp. 2d 89, 90 (D.D.C. 2009), and the plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction over the claim, *see Fernandez*, 760 F. Supp. 2d at 35. Moreover, in reviewing a motion to dismiss under Rule 12(b)(1), a court may "consider such materials outside the pleadings as it deems

appropriate to resolve the question whether it has jurisdiction to hear the case."
*Holman v. Williams*, 436 F. Supp. 2d 68, 73 (D.D.C. 2006) (internal quotation marks
and citation omitted).

Alternatively, if the exhaustion requirement at issue is *non*-jurisdictional, "the
exhaustion requirement is treated as an element of the underlying claim[,]" and the
defendant may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)
for failure to state a claim upon which relief can be granted. *Fernandez*, 760 F. Supp.
2d at 34–35 (internal quotation marks and citation omitted). As most relevant here, a
defendant can move to dismiss a claim under Rule 12(b)(6) in its pleadings or "at
trial[,]" Fed. R. Civ. P. 12(h)(2), and to grant such a motion, the court must find that
"the purposes of exhaustion and the particular administrative scheme support" dismissal
of the unexhausted claim, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003)
(internal quotation marks and citation omitted). Additionally, as always, when
evaluating a Rule 12(b)(6) motion brought on exhaustion grounds, the court must accept
the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's
favor. *See Washington v. District of Columbia*, 538 F. Supp. 2d 269, 274 (D.D.C.
2008). The court must also limit its review to "the facts alleged in the complaint, any
documents either attached to or incorporated in the complaint and matters of which [the
court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d
621, 624 (D.C. Cir. 1997).

## D.   Post-Trial Motions Relating To The Judgment

Finally, because the Court permitted Brown to raise his CMPA-related arguments
in the context of a post-trial motion, and because Brown has dutifully filed such a
motion under Federal Rules of Civil Procedure 50, 59(e), and 60 (*see* Def.'s Mot. at 10–

11), the Court will briefly explain the legal standards that govern motions brought pursuant to those Rules.  First, under Rule 50, if a party moved for judgment as a matter of law during a jury trial and the court declined to grant the motion, the party may file a renewed motion after trial reasserting his request for an entry of judgment in his favor. *See* Fed. R. Civ. P. 50(b).  In order to prevail on such a post-trial motion for judgment as a matter of law, the party must prove that "the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in [the non-moving party's] favor." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

Rule 59(e), meanwhile, permits a party to move for an altered or amended judgment after a trial, and the court may grant such a motion if it "finds that there [has been] an intervening change of controlling law"; that new evidence is available; or that there is a "need to correct a clear error or prevent manifest injustice." *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998) (internal quotation marks and citation omitted).  A party can also file a motion under Rule 60 for relief from a final judgment on various grounds, including that "the judgment is void[,]" Fed. R. Civ. P. 60(4), or for "any other reason that justifies relief[,]" Fed. R. Civ. P. 60(b)(6)—as long as that reason presents "extraordinary circumstances justifying the reopening of a final judgment[,]" *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016) (internal quotation marks and citation omitted).

III.   **DISCUSSION**

As explained, the parties in this case dispute the relevance and implications of the CMPA with respect to Amobi's malicious prosecution of administrative removal claim.  According to Brown, malicious prosecution of administrative removal claims must be exhausted under the CMPA's exclusive remedial scheme, either as a jurisdictional or as a prudential matter, while Amobi insists that the CMPA's exhaustion requirement simply does not apply to his claim.  For the reasons explained fully below, this Court concludes that the CMPA's exhaustion requirement is non-jurisdictional in federal court, the statute's administrative scheme *does* extend to malicious prosecution of administrative removal claims, and because Amobi did not exhaust his administrative remedies with respect to that claim, his claim must be dismissed for failure to state a claim upon which relief can be granted.

**A.    The CMPA's Exhaustion Requirement Is Non-Jurisdictional In Federal Court, And Brown's Motion Must Be Construed As A Motion To Dismiss Under Rule 12(b)(6)**

The CMPA requires "an employee of the District of Columbia [to] bring to an administrative tribunal, not the Superior Court, any complaint arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." *Lattisaw*, 905 A.2d at 793 (quoting *Thompson*, 593 A.2d at 636).  It is by now well established that the CMPA's exhaustion requirement imposes a jurisdictional bar to filing suit in D.C. courts.  That is, under D.C. law, employees are "preclude[d]" from litigating work-related tort claims in D.C. courts "in the first instance," and must instead raise their claims through the CMPA's administrative framework.  *Thompson*, 593 A.2d at 635.  However, there is currently a lack of consensus regarding whether the CMPA's exhaustion requirement is likewise jurisdictional in federal court.  *Compare*

*Dickerson v. District of Columbia*, 70 F. Supp. 3d 311, 320 (D.D.C. 2014) (collecting cases treating the CMPA's exhaustion requirement as jurisdictional in federal court), *with Hoey v. District of Columbia*, 540 F. Supp. 2d 218, 226–27 (D.D.C. 2008) (citing cases finding that the CMPA's exhaustion requirement is non-jurisdictional in federal court); *see also Johnson*, 552 F.3d at 810 n.2 (acknowledging that the issue is an open question in the D.C. Circuit but declining to resolve it).  (*See also* Def.'s Suppl. Mem. at 10–13 (noting the existence of a circuit split on whether state-law rules that deprive state courts of jurisdiction also deprive federal courts of jurisdiction).)  In this Court's view, the CMPA's exhaustion requirement must be applied as a *non*-jurisdictional rule with respect to potentially covered claims that are brought in federal court.

To start, the Court observes that the CMPA is a law that was enacted by a local legislature, and it is a bedrock principle of federal-court jurisdiction that, "[w]ithin constitutional bounds, *Congress* decides what cases the federal courts have jurisdiction to consider . . . and under what conditions[] federal courts can hear them."  *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007) (emphasis added); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (stating that federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto").  Indeed, it is precisely because "'jurisdictional exhaustion' is rooted[] . . . in Congress' power to control the jurisdiction of the federal courts[,]" *Avocados Plus*, 370 F.3d at 1247, that courts look for clear expressions of Congress's intent when determining whether they have jurisdiction to review an unexhausted claim.

It is also apparent that Congress has not precluded federal courts from hearing

common law tort claims that have not been exhausted under the CMPA—an omission that is especially striking given that Congress *has* authorized courts to exercise jurisdiction over common law tort claims like the one at issue here, *see* 28 U.S.C. § 1367 (permitting courts to exercise supplemental jurisdiction over state-law claims under appropriate circumstances).  And the fact that the CMPA creates a jurisdictional barrier to suit in the D.C. courts has "no bearing on whether [a federal] district court has jurisdiction to adjudicate" a D.C. employee's common law tort claim, because, again, "[o]nly Congress may determine a lower federal court's subject matter jurisdiction." *Workagegnehu v. Wash. Metro. Area Transit Auth.*, 980 F.3d 874, 877–78 (D.C. Cir. 2020) (second alteration in original) (internal quotation marks and citation omitted).

Thus, in the absence of any "sweeping and direct [congressional] language" to the contrary, this Court must conclude that the CMPA's exhaustion requirement is non-jurisdictional as it pertains to the federal courts, *Avocados Plus*, 370 F.3d at 1248 (internal quotation marks omitted), and, as a result, it will treat Brown's motion under Rules 50, 59(e), and 60 as if it is a motion to dismiss that argues that Amobi has failed to state a claim upon which relief can be granted under Rule 12(b)(6).  *See, e.g.*, *Hoey*, 540 F. Supp. 2d at 226–27 (explaining that non-jurisdictional exhaustion requirements are typically treated as elements of the underlying claim); *see also Fernandez*, 760 F. Supp. 2d at 35 (same).[5]

---

[5] It is true that, far from analyzing Brown's Rule 12 motion in the early stages of the case, as typically happens, this Court has already held a trial on the claim at issue, and a jury has rendered a verdict in Amobi's favor.  But the Federal Rules of Civil Procedure permit a defendant to raise a Rule 12(b)(6) defense "at trial[,]" *see* Fed. R. Civ. P. 12(h)(2)(C), and, in this case, that is precisely when Brown first argued that the CMPA barred Amobi's malicious prosecution of administrative removal claim (*see* Trial Tr. at 1049:3–9).  Furthermore, although Brown initially presented his argument as a jurisdictional issue under Rule 12(b)(1) instead of a non-jurisdictional matter under Rule 12(b)(6), this Court finds

**B.     The CMPA Applies To Malicious Prosecution Of Administrative Removal Claims, And Amobi Failed To Exhaust His Administrative Remedies With Respect To That Claim**

Having determined that Brown's motion to dismiss does not identify a jurisdictional defect, and instead requires the Court to assess whether Amobi has failed to state a claim with respect to his malicious prosecution of administrative removal contention (insofar as Amobi has purportedly neither alleged nor established that he exhausted the administrative remedies that the CMPA provides), the Court must now pivot to determine whether Amobi's malicious prosecution of administrative removal claim is even subject to the CMPA's exhaustion requirement, and if so, whether Amobi failed to exhaust the CMPA's administrative process, and a failure to do so under the circumstances presented cannot be excused, such that dismissal of his claim is warranted.  For the reasons that follow, the Court concludes that malicious prosecution of administrative removal claims are subject to the CMPA's administrative process; that Amobi failed to exhaust those administrative remedies; and that his failure to exhaust under the circumstances presented here requires dismissal of his malicious prosecution of administrative removal claim.[6]

It is clear beyond cavil that the CMPA "create[s] a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their

---

that Brown has not waived his Rule 12(b)(6) defense, given the ambiguity in the existing case law regarding the nature of the CMPA's exhaustion requirement in federal court.  *See supra* p. 15–16.  The Court also declines to convert Brown's motion to "one for summary judgment under Rule 56[,]" Fed. R. Civ. P. 12(d), despite Brown's presentation of supportive materials outside the pleadings.  The issues presented in the instant motion do not require the Court to consider any materials beyond the pleadings or the documents incorporated by reference therein, so the Court will apply the standards set forth in Rule 12(b)(6) to assess Brown's motion.

[6] To be precise, given the current posture of the case, "dismissal" of Amobi's claim as Brown requests will have to be effected through vacatur of the Court's existing judgment in Amobi's favor on that claim.

unions[,]" *Thompson*, 593 A.2d at 634, and, thus, it also unquestionably covers "claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions[,]" *id.* at 635.  Accordingly, courts have routinely held that the CMPA preempts common law tort claims regarding the manner in which an employee is disciplined or terminated.  *See Hoey*, 540 F. Supp. 2d at 229–31 (collecting cases).  For example, rulings have established that the CMPA governs defamation claims involving a supervisor's "handling of [a plaintiff's] discipline following an internal investigation[,]" *Washington*, 538 F. Supp. 2d at 279, and also emotional distress and defamation claims based on the allegedly "disrespectful, groundless, and public manner in which [an employee's] demotion was carried out[,]" *Hoey*, 540 F. Supp. 2d at 230 (internal quotation marks and citation omitted).  Similarly, claims for "defamation, publication of private facts, false light, negligence, and intentional infliction of emotional distress" stemming from an employer's "handling of . . . sexual harassment allegations [against an employee] and the publicity given to them[,]" *Robinson*, 748 A.2d at 411–12, are subject to the CMPA's framework.

Although it appears that there are no cases that have directly addressed a malicious prosecution of administrative removal claim in relation to the CMPA, this Court has little doubt that the CMPA covers such claims as well.  In order to state a claim for malicious prosecution of administrative removal in the employment context, an employee must prove that (1) the employer initiated or continued an administrative proceeding against the employee, (2) the proceeding was resolved in the employee's favor, (3) the employer lacked good cause for the proceeding, and (4) the employer pursued the proceeding with malice or a primary purpose "other than bringing the

offender to justice." (Final Jury Instrs., ECF No. 303, at 9.) By definition, then, a malicious prosecution of administrative removal claim concerns an employer's "handling" of an employee grievance or adverse action, *Thompson*, 593 A.2d at 635, and this Court sees no reason to treat such a claim differently for CMPA purposes than the various other covered common law tort claims that assail the manner in which an employee is terminated or disciplined, *see, e.g.*, *Hoey*, 540 F. Supp. 2d at 230–31; *Washington*, 538 F. Supp. 2d at 279–80; *Robinson*, 748 A.2d at 412.

The Court also easily concludes that Amobi did not exhaust the CMPA's administrative remedies with respect to his malicious prosecution of administrative removal claim. Prior to filing the instant legal action, the only claim that Amobi pursued through the administrative process was his challenge *to the termination itself*—he did not seek to challenge Brown's initiation or unflagging continuation of the administrative removal proceedings. (*See* 2d Am. Compl. ¶¶ 12, 16, 19 (describing Amobi's administrative challenges to his removal); Arbitration Op. at 1–3.) In other words, Amobi plainly waited to raise his malicious prosecution of administrative removal claim until he filed his first amended complaint in this action (*see* 1st Am. Compl., ECF No. 170-1, at 3), and as a result, there can be no serious dispute that he failed to exhaust administrative remedies with respect to that claim.[7]

---

[7] Notably, Amobi has not argued that the facts developed in a manner that prevented him from challenging Brown's actions through the CMPA's framework, either because he was *unaware* of any facts giving rise to his claim before he filed suit in this court, or otherwise. He does point to the memorandum from the District's attorney recommending reinstatement—which he claims he did not discover until litigating this case (*see* Pl.'s Suppl. Mem. at 6)—but the record suggests, for instance, that during the administrative removal process, Amobi learned that Brown had remanded the hearing officer's decision, and that Brown refused to reinstate him after his acquittal (*see* Final Removal Decision, Ex. 8 to Def.'s Suppl. Mem., ECF No. 327-8, at 1–2; 2d Am. Compl. ¶ 17). Amobi has not provided any reason that such knowledge was insufficient to support a CMPA grievance in this regard.

Amobi presents three main arguments in an attempt to resist this conclusion, none of which has merit.  First, Amobi proclaims that the CMPA does not apply to malicious prosecution of administrative removal claims at all, because the statute "does not permit an employee to challenge an adverse action through the grievance process, win at arbitration, and then file another grievance regarding his employer's handling of the prior successful grievance."  (Pl.'s Suppl. Mem. at 5.)  But Amobi has not offered a shred of legal support for that proposition, nor has he provided any reason to conclude that an employee's successful challenge to his termination prevents him from subsequently raising a separate administrative claim about the manner in which his employer pursued his termination in the context of the administrative review process. In fact, existing case law strongly suggests otherwise; in cases where a plaintiff challenges his removal *and* his employer's handling of the removal, courts have held that the CMPA applies to *both* claims, and that plaintiffs are required to pursue all of their administrative remedies before litigating either issue in court.  *See, e.g.*, *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 45–48 (D.D.C. 2005) (holding that a plaintiff's wrongful termination, defamation, and emotional distress claims must be dismissed for failure to exhaust administrative remedies under the CMPA, where the defamation claim was also based on alleged statements "made in the process of [the employer's] handling of disciplinary action" against the plaintiff, and the emotional distress claim challenged the manner in which the employer pursued the plaintiff's termination), *aff'd*, 552 F.3d 806 (D.C. Cir. 2008).

Second, Amobi argues that he could not have pursued his malicious prosecution of administrative removal claim under the CMPA as an unfair labor practice—another

type of challenge under the CMPA—given that the statute of limitations for bringing such a claim had already expired by the time he discovered the "full nature of how Defendant Brown maliciously continued the administrative proceeding against him[.]" (Pl.'s Suppl. Mem. at 6.)  But the fact that such a claim may have been time-barred does not mean that the CMPA did not apply.  To the contrary, under the CMPA, plaintiffs must pursue their claims through the appropriate administrative channels—and permit the administrative body to determine whether it can hear the claim—before filing the claim in court.  *See White*, 852 A.2d at 925; *Hawkins v. Hall*, 537 A.2d 571, 573 (D.C. 1988).

Third, and finally, although Amobi does not contend that he actually brought a malicious prosecution of administrative removal claim in any administrative proceeding, he nevertheless maintains that he should be deemed to have exhausted his administrative remedies for that claim because he "receive[d] a favorable decision at arbitration."  (Pl.'s Suppl. Mem. at 6; *see also* Pl.'s Opp'n at 6–7.)  In this regard, Amobi appears to suggest that once he completed the administrative process with respect to the underlying claim—*i.e.*, his challenge to the summary removal—there were no further administrative remedies for him to exhaust.  (*See* Pl.'s Suppl. Mem. at 5–6.)  Yet, it is well established that when an employee files a grievance under the CMPA and seeks relief under the statute's established procedures, he has exhausted his administrative remedies *only* with respect to that particular grievance.  If he has an additional and distinct problem that he wishes to raise, and another claim for relief concerning that issue, he must file a separate grievance and pursue his administrative remedies with respect to that claim as well.  *See, e.g.*, *Lattisaw*, 905 A.2d at 795

(explaining that a plaintiff's exhaustion of administrative remedies under the CMPA for one claim had "no bearing" on his duty to exhaust his administrative remedies for another claim); *see also Washington*, 538 F. Supp. 2d at 278–80 (requiring plaintiffs to exhaust their administrative remedies under the CMPA for separate claims that arose from a single set of facts).

So it is here. Amobi's challenge to DOC's decision to remove him was a distinct claim from his challenge to the *manner* in which Brown handled his removal—and, apparently, Amobi acknowledges this, hence his subsequent efforts to litigate a claim for malicious prosecution of administrative removal. Thus, Amobi's exhaustion of administrative remedies with respect to the former in no way relieved him of his exhaustion obligations with respect to the latter. Moreover, and in any event, if "substantial question[s] existed" as to whether the CMPA's exhaustion requirement applied to Amobi's malicious prosecution of administrative removal claim, the proper course was to present that claim to the "appropriate District agency" for resolution of such questions in the first instance, *not* to bypass the CMPA's procedures altogether and file a legal action in court. *White*, 852 A.2d at 925 (internal quotation marks and citation omitted).

For all these reasons, the Court finds that the CMPA's exhaustion requirement applied to Amobi's malicious prosecution of administrative removal claim, and that Amobi failed to comply with that requirement.

### C.  Amobi's Failure To Exhaust His Administrative Remedies Warrants Dismissal In This Case

As explained earlier, on the one hand, a non-jurisdictional exhaustion requirement can sometimes be excusable; however, on the other, the plaintiff's failure

to comply with a non-jurisdictional exhaustion requirement might well "preclude[] judicial review[.]" *Hidalgo*, 344 F.3d at 1258–59.  One circumstance in which a non-jurisdictional exhaustion requirement can result in the dismissal of a claim is if the "particular administrative scheme" and "the purposes of exhaustion . . . support such a bar." *Id.* at 1259 (internal quotation marks and citation omitted).  The D.C. Circuit has long held that a court should dismiss the unexhausted claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted when the relevant statutory provisions make clear that exhaustion of administrative remedies is a "condition precedent to filing suit[,]" *id.* (internal quotation marks and citation omitted), and if the court finds that allowing the plaintiff to bypass the administrative review process would "frustrate the policies underlying the exhaustion requirement[,]" *id.* at 1260.  In the instant case, both the nature of the CMPA's administrative scheme and the purposes of exhaustion counsel in favor of dismissing Amobi's claim.

For one thing, there is no question that exhaustion of administrative remedies under the CMPA is a necessary precondition to filing suit.  As noted, the CMPA is consistently heralded as the "exclusive" remedy for work-related complaints among public employees of the District of Columbia, *Thompson*, 593 A.2d at 635, and by its terms, that statute provides courts with "only a reviewing role" and "as a last resort," *Lattisaw*, 905 A.2d at 793 (internal quotation marks and citation omitted); *see also Thompson*, 593 A.2d at 634.  Of course, there is nothing for a court to review in a case in which the employee has failed to exhaust his administrative remedies, and because the CMPA preempts common law tort claims that fall within its purview, a court cannot assess the plaintiff's claim as an independent tort action.  *See Thompson*, 593 A.2d at

624. Thus, exhaustion of administrative remedies is an integral—and indispensable—feature of the CMPA's scheme.

What is more, it is clear to this Court that permitting Amobi to circumvent the CMPA's administrative framework would undermine the purposes of exhaustion. Indeed, Amobi's failure to comply with the CMPA's administrative process plainly frustrates the general goals of exhaustion by depriving the relevant District agencies and administrative tribunals of the opportunity to exercise their "expertise and discretion" to address the manner in which Amobi's removal was handled. *Johnson*, 368 F. Supp. 2d at 38 (internal quotation marks and citation omitted); *see also id.* (explaining that exhaustion is intended to "forestall the premature interruption of the administrative process"; "preserv[e] the autonomy" of administrative bodies; and promote "effective" judicial review by allowing courts to benefit from "the agency's exercise of discretion or application of expertise" (internal quotation marks and citations omitted)). The failure to exhaust also vitiates fundamental principles of "federalism and comity[,]" *Washington*, 538 F. Supp. 2d at 275, by "trampl[ing] on the clearly expressed will" of the D.C. Council to *require* employees to seek relief for work-related claims through the CMPA's administrative scheme, *Johnson*, 368 F. Supp. 2d at 43 (strictly enforcing the CMPA's exhaustion requirement to respect the D.C. Council's "express intention . . . regarding the proper application of its enactments"); *see also* Council of D.C., Comm. Rep. on Bill No. 2-10 (D.C. 1978), *as reprinted in* H. Comm. on D.C., 96th Cong., 1st Sess. 144 (Comm. Print 1979) (explaining that the CMPA was meant to replace an "inefficient hodge-podge system" which "ha[d] made essential the creation of a truly uniform system of merit personnel administration");

D.C. Code § 1-601.02(a) (stating that the purposes of the CMPA include "[c]reat[ing] uniform systems for personnel administration among" employees of the District of Columbia, and "[e]stablish[ing] impartial and comprehensive administrative or negotiated procedures for resolving employee grievances").

Consequently, even if this Court might otherwise be persuaded to allow Amobi's claim to proceed based on broader prudential concerns—such as the fact that the Court has already compiled a full record in this case, and a jury has already rendered a verdict with respect to the claim at issue—such prudential considerations are outweighed by the significance of the CMPA's exhaustion requirement, and as other courts have observed under such circumstances, exhaustion is much more than "a mere judge-made rule[.]" *Johnson*, 368 F. Supp. 2d at 43. Indeed, if this Court were to ignore the CMPA's exhaustion requirement and excuse Amobi's failure to comply under the circumstances presented here, the uniformity and exclusivity of the entire remedial scheme would be subverted, as Amobi would be able to pursue his common law tort claim in federal court, while similarly-situated employees who try to pursue the exact same common law tort claim in Superior Court would have their claims immediately dismissed for failure to exhaust administrative remedies. And Amobi provides no reason why the law should countenance that inequitable result.

Amobi's final effort to thwart the dismissal of his claim is the argument that the Court should not enforce the CMPA's exhaustion requirement in this case because the remedies available under the CMPA were inadequate to redress the harm caused by Brown's alleged misconduct. (*See* Pl.'s Suppl. Mem. at 6.) This contention fares no better. Amobi insists that "[w]ithout the opportunity to bring this action" in federal

court, he "[c]ould not be made whole" for his alleged injuries, because the CMPA does not authorize the specific relief that he sought in his complaint—namely, punitive and non-economic damages. (*Id*. at 7.) But this Court is not aware of any legal principle that allows plaintiffs to bypass an exclusive remedial framework simply because the administrative scheme does not provide the precise form of relief that the plaintiff seeks—and Amobi offers none. It is certainly true that "'government employees only lose common law rights of recovery if the statute provides redress for the wrongs they assert'" (*id*. at 6–7 (quoting *Robinson*, 748 A.2d at 411)), but the CMPA offers "substantial" remedies for work-related grievances, and those remedies "may, in some respects, afford more complete relief than the damage remedies available at common law[,]" *Thompson*, 593 A.2d at 635. Moreover, "[a]n exclusive remedy does not lose its exclusivity upon a showing that an alternative remedy might be more generous[,]" *White*, 852 A.2d at 927, and, in any event, it simply cannot be the case that a plaintiff can prevent the exhaustion-related dismissal of a claim just by requesting types of relief that the administrative scheme does not offer, *see Hoey*, 540 F. Supp. 2d at 228 n.5. And that is especially true where, as here, the plaintiff has not provided the Court with any reason to believe that the relief that his complaint requests is the *only* type of remedy that could *possibly* redress his alleged injuries. (*See* Pl.'s Suppl. Mem. at 6–7.)

Thus, this Court finds that excusing the applicable CMPA exhaustion requirement would undermine that requirement's purposes in the manner explained above, and it rejects Amobi's efforts to evade the CMPA's exhaustion requirement under the circumstances presented here.

## IV.     CONCLUSION

Amobi's malicious prosecution of administrative removal claim must be dismissed under Rule 12(b)(6) for failure to exhaust the CMPA's administrative remedies, for the reasons explained above.  Consequently, as set forth in the accompanying Order, Brown's renewed motion for judgment as a matter of law (ECF No. 321) will be **GRANTED** insofar as it seeks dismissal of Amobi's claim under Rule 12(b)(6), and the portion of the judgment (ECF No. 304) that pertains to Amobi's malicious prosecution of administrative removal claim will be **VACATED**.

DATE:  August 23, 2021                              *Ketanji Brown Jackson*
                                                                         KETANJI BROWN JACKSON
                                                                         United States Circuit Judge
                                                                         *Sitting by Designation*